FIELD, P.
This case upon the trial, referred to in the first bill of exceptions, seems to have been somewhat different from the facts proved on the final trial. The first was the case of a verbal promise made by the father to make a gift of slaves to the daughter and her husband in consideration of the marriage, and the delivery of the slaves to the husband, by the father, in execution of the promise after the marriage had taken place. On the' last trial, it appeared to be a verbal gift of slaves from the father to the daughter, not accompanied by the transfer of the possession thereof at the time from the father to the daughter, but the possession of which was retained by the father until after the marriage took place, and then after the lapse of two days or more delivered to the husband by the father. But from the view I have taken of the case, it is not material to ascertain whether it is to be regarded as the case of a verbal promise of a gift of slaves in consideration of the contemplated marriage, and the delivery of the property to the husband in fulfillment of the promise after the marriage had taken place; or whether it is to be regarded *'as a verbal gift of slaves made by the father to the daughter before the marriage, but the possession of which remained with the father until two days or more after the marriage had taken place, and then delivered to the husband by the father. In either aspect of the case, I regard the law to be the same, so far as the rights of the creditors of the father are concerned. It appears from the record that the father was totally insolvent at the time of making the promise or gift, and unable to pay his debts. Nevertheless, if he had, before the marriage took place, made a perfect gift of property in consideration of the marriage, or obligated himself, by a written promise, to make the gift after marriage in consideration of the marriage, and had actually made the gift pursuant to the promise, the husband’s title to the property, notwithstanding the insolvent condition of the father, would have prevailed against the claims of the creditors, because marriage is regarded as a valuable consideration. See the case of Huston’s adm’r v. Cantrill et als., 11 Leigh, 136. If the promise or agreement, made before marriage, be in writing, the performance of it can be enforced by the husband after the marriage. But if the promise or agreement be made before marriage, and be verbal only, and the gift or settlement be not made until after the marriage takes place, whether that gift or settlement is *852 valid against the claims of creditors appears not to be a settled question. We find in the books many decisions pro and con of high authority: a few only of which I purpose to notice.
The strongest case to be found to support the validity of a post-nuptial settlement made pursuant to a verbal promise made before marriage, wa.s decided by Lord Chancellor Thurlow. This is the case of Dundas v. Dutens, 1 Ves. jun. 196, but better reported by Mr. Cox, who was counsel in the cause, in 2 Cox, 235. This case appears to have been recognized and followed by the Court of King’s Bench in Shaw v. Jakeman, 4 *East, 207; but was questioned by Sir William Grant, Master of the Rolls, in Randall v. Morgan, 12 Ves. jun. 67-74, and is contrary to principles laid down in Spurgeon v. Collier, 1 Eden. 61. It accords with the cases which arose prior to the passage of the statute of frauds, 29 Charles II—such as Griffan v. Stanhope, Cro. J. 454, and Sir Ralph Bovy’s Case, 1 Vent. 193. But Dundas v. Dutens can derive no support from decisions made prior to the statute of frauds, because until the passage of the statute of 29 Charles II, it was not requisite that such provisions should be in writing. Nor can the case of Dundas v. Dutens derive any support from cases in which the decision did not turn on the mere parol promise, but on considerations of fraud, and in which the verbal promise made before marriage to make a settlement was enforced in order to relieve against the fraud. Of this class is the case of Montacute v. Maxwell, 1 P. Wms. 620, in which the Lord Chancellor said, “In cases of fraud equity should relieve, even against the words of the statute,” &c. It this case the husband had practiced a fraud on the credulity and confidence of his wife, and thereby induced her to marry him, although he had not executed according to promise the marriage settlement. The chancellor compelled him to make the settlement according to the ante-nuptial verbal promise.
In the argument of this case the appellant’s counsel relied very much on the case of Argenbright v. Campbell et ux, 3 H. & M. 144. That case was substantially as follows.: John Campbell, upwards of eighty years of age, made a will by which he gave the land on which he resided to his daughter Rebecca, subject to his own life-estate therein and to the payment of ^50 to his daughter Hannah. He wished Andrew Campbell to marry his daughter Rebecca, and told him that if he married her," and complied with the will, he should have the land. Andrew Campbell did marry Rebecca. After which, John Campbell executed his obligation in writing to Andrew Campbell, in which, after citing the verbal ^promise, the making of the will and the marriage of Andrew Campbell with his daughter Rebecca, he bound himself not to alter or change the will so far as it related to the land, and not to convey the land so as to deprive Andrew Campbell and his heirs or assigns of the benefit thereof. After the execution of this bond John Campbell offered the land for sale, and Argenbright, being in treaty for the purchase, was notified by Andrew Campbell of his claim to it, who also inserted in the Staunton paper a notice cautioning persons against purchasing the land, and had the bond recorded in the district court at Staunton in April, 1794. Ar-genbright nevertheless, in disregard of the notice, went on to make the purchase and had his deed executed the 3d day of May, 1794. The suit was brought by John Campbell. and wife to have the deed set aside and the land convej-ed to them. John Campbell having died pendente lite, the decree of the court required Argenbright to convey the land to Rebecca Campbell and to account for rents and profits since the death of John Campbell, and required Andrew Campbell to pay the ^50 to Hannah Campbell. The bare statement of this case should be sufficient to shew that between it and the case at bar there is no analogy in their material points. Eor suppose it be admitted that if John Campbell had been an insolvent man, and that the claims of his creditors would prevail over the claim of Andrew Campbell and wife, under the will and bond, yet as John Campbell was not in debt, and as Argenbright had become a purchaser with full notice of the claim of Andrew Campbell and wife, he was himself guilty of fraud in purchasing the land after full notice, and should be compelled to surrender the title, thus fraudulently acquired, to Mrs. Campbell, and this is the very thing which the court compelled him to do.
The cases chiefly relied on by the appel-lee’s counsel, to show the invalidity of a post-nuptial settlement upon a verbal promise made before marriage, are the cases of Spurgeon v. Collier, before referred to, and Reade v. *Livingston, 3 John. C. R. 489. The case of Reade v. Livingston was decided by Chancellor Kent, who held that “a settlement after marriage, in pursuance of a parol agreement entered into before marriage, is not valid.” Tlie rule laid down by Chancellor-Kent has been followed by the Supreme Court of South Carolina, in the case of Izard v. Izard, 1 Bailey’s Eq. Rep. 228, and by the North Carolina court, in Koonce v. Bryan, 1 Dev. & Bat. Equity R. 227. Dispensing with any further reference to authorities on either side of the question, I may say that such is the state of the adjudicated cases, that I think we may, with great propriety, regard it as an open and unsettled question at this time, and proceed in its consideration, as one of the first impression, and decide it, as well as we can upon principle, irrespective of the authorities either way. ■
Mr. Roper considers, that such a promise would not support a settlement against creditors, because the statute of frauds is express, that no action shall be brought whereby to charge a person upon any agreement made in consideration of marriage, unless some memorandum or note thereof *853 shall be in writing, and signed by the party to be charged therewith, or some other person by him lawfully directed. 1 Rop. H. & W. 307.
Mr. Atheriy says, “I do not see how the doctrine can possibly be sustained — for, to support the settlement, resort must be had to the previous agreement, and this agreement can only be proved by parol evidence, and to admit parol proof in such a case would be completely inconsistent with the spirit and design of the statute of frauds. Atherly on Marriage Settlements, 149.
Judge Story says, “there have been some struggles in courts of equity to maintain the efficacy of such a post-nuptial settlement against creditors, where it purported to be founded upon a parol agreement before marriage, recited in the settlement. But the strong inclination of these courts now seems to be, to consider *such a settlement incapable of support from any evidence of a parol contract, since it is in effect an attempt to supersede the statute of frauds, and to let in all the mischiefs, against which that statute was intended to guard the public generally, and especially to guard creditors, 1 Story Eq. Juris. § 374.
Ho one pretends that a father, who before marriage makes a verbal promise of a gift of property to his daughter, in consideration of the marriage, can be compelled by suit to perform that promise, either before or after the marriage takes place. But it is said that the statute is intended for the protection of the father only, or the person who makes the promise, and that, therefore, he may waive the benefit of the statute, and carry out the promise by executing the gift or settlement, and that the gift or settlement, so voluntarily made, should be supported against the -claims of creditors, because the consideration of marriage is a valuable consideration; and because the consideration of marriage is valuable, such gift or settlement should be equally valid, with a new promise to pay a debt, the recovery of which had been barred by the statute of limitations, or the promise of a bankrupt to pay a debt from which he had been released by his certificate of bankruptcy.
It would not be strictly true to say, that there is no sort of analogy between the cases; yet I think it can be clearly shown, for the purposes of the argument, that they are very materiall3 different. In regard to the debts referred to, they were at one time just and valid obligations, which the debtor could be compelled to pay, whether he pleased to do so or not, by suit; and although, from considerations of public policy, he has been released from these obligations, yet, in honesty and morals, they are subsisting, unsatisfied claims, and should be paid by the debtor, if his pecuniary circumstances should at any future time enable him to pay them. To pay such debts would be a laudable and praiseworthy act, and the more meritorious on the part of the debtor, because voluntary. Ho sort of evil or mischief could result *to society from the payment of such debts. For it is very certain that no such debt would ever be paid, which was not a just and honest claim upon the debtor. Hence, an obligation to pay such debts, and a security by mortgage, for example, to ensure the payment of the bond, should prevail against the world. For who, or what creditor, is it that can say, “that my claim should be first paid, because it is sanctioned by a higher obligation of duty and founded upon a more honest and valuable consideration than either of the debts above referred to? Is an obligation of this sort to be said to be analogous to the pie-crust verbal promises of a father, which, if he pleases, may result in making himself and his family comfortable at the expense of his creditors? The father may make to each and every child he has a verbal promise of a gift of property, in consideration of marriage, and arm himself with testimony to prove the fact, when necessary. And when, at a future time, he is called upon to pay his debts, he executes gifts and settlements to his married children, pursuant to the provisions theretofore made, calls upon the witnesses, and proves that the promises had been made, and thus strips himself of all his property, and cheats and defrauds his just creditors out of every cent that he owes them.
It is going sufficiently far to hold, that where a parent, who is insolvent, settles all his property upon his daughter, in consideration of the marriage, by a valid instrument in writing, executed before marriage, such settlement shall prevail over the claims of creditors — such is the law, and we must submit to it. But I can perceive no good reason for departing from the strict letter of the law, and by construction destnw its efficacy, in a great measure, and so enable a wicked man, by enlarging the field of his operations, to continue to practice such frauds upon his creditors. A strict and rigid construction of the law, according to its very letter, would prevent much mischief, and should be the rule to guide us in such cases. Bet settlements and *gifts of this sort, when made, be held to be valid between the parties and privies, and as to debts thereafter contracted ;• but as to all pre-existing debts, let them be regarded as voluntary and void. A rule of this kind accords with the conclusion arrived at in the note to Wennall v. Adney, 3 Bos. & Pul. 247; and which Lord Denman said, in Eastwood v. Kenyon, 11 Adol. & Ellis, 137, seemed to be the correct rule, to wit: That an express promise can only revive a precedent good consideration, which might have been enforced at law, through the medium of an implied promise, had it not been suspended by some positive rule of law; but can give no original cause of action, if the obligation on which it is founded never could have been enforced, though not barred, by any legal maxim or statutory provision.
I am of opinion, that there is no error *854 in the record, and that the judgment should be affirmed, with costs.
TYLER, CLOPTON and NASH, Judges, concurred with EIELD, P.